## BALL ENGINEERING CO. v. J. G. WHITE & CO.

(District Court, D. Connecticut. March 31, 1914.)

### No. 813.

UNITED STATES (§ 75*)—CONTRACTS—ABANDONMENT—MATERIALS AND MACHINERY—RIGHTS OF GOVERNMENT.

Where a government contract for the construction of a lock and dam in a navigable river provided that, in case of annulment of the contract, the United States should be entitled to take possession of and retain all materials, tools, buildings, tramways, cars, etc., or any part or parts of the same prepared for use or in use in the prosecution of the work, together with all leases, rights of way, or quarry privileges, under purchase, at a valuation to be determined by the engineer in charge, such provision did not authorize the government to take materials, tools, etc., belonging to a person other than the contractor without payment to the owner, nor did it authorize the government to retain materials, tools, etc., whether the property of the contractor or other person, on payment of the rental value instead of the purchase value thereof.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 57; Dec. Dig. § 75.*]

At Law. Action by the Ball Engineering Company against J. G. White & Co. On motion to recommit report of committee, on plaintiff's demurrer to the remonstrance filed to the report of the committee, and on motion by plaintiff to accept such report. Motion to recommit denied, plaintiff's demurrer sustained, and plaintiff's motion for acceptance of the report granted.

The following is the report of the committee:

The undersigned, having been appointed by the Honorable James L. Martin, holding, by appointment, a term of this court, sole committee to hear and determine the above-entitled cause, and to report his findings of fact and conclusions of law therein, by order dated the 8th day of October, 1912, pursuant to stipulation of counsel, respectfully submits his report as follows, certain of the facts herein set forth having been found at the request of the defendant, as the basis for the submission to this court of certain rulings hereinafter set forth, adverse to the defendant, and certain of said facts being found at the request of the plaintiff, as a basis for its claims in relation to said rulings:

1. On the 6th day of March, 1913, being the earliest date convenient to counsel, he proceeded to a hearing in said cause, at his office in the city of New Haven, where counsel and their witnesses were in attendance; the parties being at issue as on file. The committee and the stenographer having been duly sworn, the parties were then heard, by their counsel and witnesses, and thereafter, by continuance to the 7th, 10th, 11th, and 12th days of March, 1913, when the hearings closed; briefs being thereafter filed by counsel, pursuant to stipulation.

2. It was admitted that the corporate name of the defendant was "J. G. White & Company, Incorporated," and the committee so finds.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

212 F.—64

3. On or about April 2, 1910, the plaintiff, "Ball Engineering Company," was incorporated under the laws of the state of Missouri, with a capital stock of $50,000, divided into 500 shares, of the par value of $100 each. Ever since the incorporation of the plaintiff, Ball Engineering Company, said P. D. C. Ball has been the president and a director of said Ball Engineering Company, and the holder and owner of 498 out of the 500 shares of stock of said company. On the 2d day of April, 1910, said P. D. C. Ball was the owner of the personal property described in the complaint, and on said day executed and delivered to the plaintiff, Ball Engineering Company, an instrument, a copy whereof is hereto annexed and by reference made a part hereof, marked "Plaintiff's Exhibit C," whereby said P. D. C. Ball sold and delivered to said Ball Engineering Company, among other things, all of the property described in the complaint and in plaintiff's Exhibit A, a copy of which is hereto annexed, whereby said property had been theretofore sold by one George A. Carden, to said P. D. C. Ball. Said property was then situated upon land belonging to the United States, known as the site of lock and dam No. 6, on the Trinity river, in the county of Dallas, in the state of Texas.

4. On the 10th day of July, 1906, the United States entered into a contract with the Hubbard Building & Realty Company, a corporation organized under the laws of the state of Texas, whereby said company agreed to construct lock and dam No. 6 in accordance with the plans and specifications forming a part of said agreement, which agreement, marked "Defendant's Exhibit 8," is submitted herewith and by reference made a part hereof.

5. In or about the year 1905, a partnership was formed by and between George A. Carden, of Dallas, Tex., and P. D. C. Ball, of St. Louis, Mo., which was known as the "Ball-Carden Company." During the 12 months prior to September, 1909, said partnership purchased the property in paragraph 3 of the complaint herein. The great majority thereof was new when placed on the site of said lock and dam, and all of said property was purchased with moneys furnished by said P. D. C. Ball. Said property was placed by said copartnership at the site of said lock and dam No. 6 and was thereafter and until in or about the month of May, 1909, used by said copartnership in the construction of said lock and dam.

6. The said Hubbard Building & Realty Company having failed to complete the construction of said lock and dam within the period of time limited by the contract between the said Hubbard Building & Realty Company and the United States, on or about the 21st day of August, 1908, an application was made in the name of the said Hubbard Building & Realty Company by the said George A. Carden as president of said company for an extension of the time for the completion of said lock and dam until eight months from September 1, 1908. Said extension of time so requested was granted by the United States government. The said lock and dam not having been completed prior to May 1, 1909, on or about May 29, 1909, a request for a further extension was made by a letter dated May 29, 1909, signed in the name of the Hubbard Building & Realty Company by said George A. Carden as president of that company. Said further extension was granted by the government of the United States.

7. In April or May, 1909, said partnership was dissolved, and discontinued the work theretofore carried on by it in the construction of said lock and dam No. 6. On or about the 24th day of July, 1909, said George A. Carden executed and delivered to said P. D. C. Ball an instrument, a copy whereof is hereto annexed and by reference made a part hereof, being "Plaintiff's Exhibit A" as marked in evidence herein, whereby said George A. Carden sold and delivered to said P. D. C. Ball all of his right, title, and interest in and to all of the personal property of every kind and description, including material, machinery, and appliances, belonging to the said partnership between the said George A. Carden and the said P. D. C. Ball, known as the "Ball-Carden Company," used in connection with or located at or near lock and dam No. 6, then in process of construction by the United States government at Trinity river below Dallas, Tex., in the county of Dallas; said property being the same described in paragraph 3 of the complaint herein.

8. After the dissolution of the said copartnership between said George A.

Carden and said P. D. C. Ball, and until on or about September 8, 1909, said P. D. C. Ball, operating under the name of the "Ball Engineering Company," continued the work of constructing the said lock and dam No. 6, using for that purpose the said property referred to in said paragraph 3 of the complaint herein, sold to him as aforesaid by said George A. Carden.

9. From about June 1, 1909, until the incorporation of the plaintiff, Ball Engineering Company, one Oscar Shanks was the personal representative at the site of said lock and dam No. 6 of said P. D. C. Ball, doing business under the name of "Ball Engineering Company," and was the general superintendent of said P. D. C. Ball at the site of said lock and dam No. 6, and as such representative and superintendent was in charge of the construction work upon said lock and dam No. 6 from on or about June 1, 1909, until on or about September 8, 1909, at which time said work ceased.

10. During the period when said Shanks was present at the site of said lock and dam No. 6, and in charge of the work of constructing said lock and dam, as aforesaid, he saw, and had in his possession, the plans and specifications contained in defendant's Exhibit 8, hereinbefore referred to, which were turned over to him by his predecessor. During said period said Shanks, from time to time, discussed such portions of said specifications as were necessary in the construction of the work with Capt. A. E. Waldron, the engineer officer of the United States government in charge of the work of constructing said lock and dam, and said Shanks carried on the work of constructing said lock and dam, as aforesaid, under the direction of said P. D. C. Ball. No portion of the property mentioned in the complaint was brought upon the work after the arrival of Mr. Shanks at lock and dam No. 6.

11. On September 9, 1909, work upon said lock and dam No. 6 was abandoned. On October 22, 1909, notification of the annulment of said contract pursuant to its provisions was given to the Hubbard Building & Realty Company by letter of that date signed by A. E. Waldron, Captain Corps Engineers, U. S. A., payable to the order of the said Hubbard Building & Realty Company in payment of vouchers issued in favor of said Hubbard Building & Realty Company approved by said Capt. A. E. Waldron for work done and material furnished on said lock and dam No. 6, Trinity river, Tex., and each of said checks bore the indorsements, "Hubbard Building & Realty Company by George A. Carden, President," and, "Pay to the order of National Bank of Commerce, P. D. C. Ball"; the only variation from such indorsements being on one of said checks dated January 4, 1909, whereon the indorsements were as follows: "Hubbard Building & Realty Company, by George A. Carden, President," and, "P. D. C. Ball." Each of said checks bore on its face the following statement, "State object for which drawn," under which the following further statement appeared on each of said checks, "Constructing lock and dam No. 6, Trinity river, Texas." Ten other checks were issued and signed, five by W. P. Wooten, Captain Corps of Engineers, U. S. A., and five by Capt. A. E. Waldron, Corps of Engineers, U. S. A., dated respectively on dates beginning December 7, 1907, and ending August 7, 1909, payable to the order of the Hubbard Building & Realty Company, in payment of vouchers issued in favor of the Hubbard Building & Realty Company, five of which were approved by said Capt. W. P. Wooten and five by said Capt. A. E. Waldron, for work done and material furnished on lock and dam No. 6, Trinity river, Tex. Each of said last-mentioned ten checks bore the following indorsement: "Hubbard Building & Realty Company, by George A. Carden, President." Another check was issued, signed by Capt. W. P. Wooten, Corps of Engineers, U. S. A., dated November 18, 1907, and payable to the order of the Hubbard Building & Realty Company, in payment of a voucher issued in favor of the Hubbard Building & Realty Company and approved by said Capt. W. P. Wooten, for work done and material furnished on lock and dam No. 6, Trinity river, Tex. Said last-mentioned check bore the following indorsements: "Hubbard Building & Realty Company, G. E. White, Secty." and, "The Southern Trading Company, G. E. White, V. Pt." All of the above-mentioned checks bore upon their face the following statement, "State object for which drawn," under which the following further statement appears on each of said checks, "Constructing lock and dam No. 6, Trinity river, Texas."

13. After the time of the incorporation of the plaintiff, Ball Engineering Company, the said Oscar Shanks was in the employ of said company, and was the representative and superintendent of said company at the site of the work on said lock and dam No. 6, and also at locks and dams Nos. 2 and 4, on the said Trinity river.

14. It did not appear under what circumstances 'either the plaintiff or said P. D. C. Ball, operating under the name of the Ball Engineering Company, undertook to perform said work or furnish said materials, nor did it appear under what circumstances said Ball-Carden Company entered upon said work, other than that this was done without the actual knowledge of said P. D. C. Ball, who did not learn thereof until two or three months later.

15. Pursuant to advertisement dated April 30, 1910, a contract, dated May 18, 1910, and approved June 6, 1910, was entered into between the United States and the defendant for the completion of lock and dam No. 6. An original of this agreement, marked Exhibit 21, is submitted herewith and by reference made a part hereof.

16. Prior to the making of said contract, one F. G. Ward and one E. G. Williams, employés of the defendant, attempted, in behalf of the defendant, without success, to agree with the plaintiff for the purchase or rental of the personal property and materials specified in the complaint, and on June 8, 1910, a notice, signed in the name of said P. D. C. Ball, by Oscar Shanks, was sent to the defendant, stating that said property did not belong to the Hubbard Building & Realty Company but that it was the personal property of said P. D. C. Ball, a copy whereof is hereto annexed, marked "Defendant's Exhibits 1 and 2."

17. On June 6, 1910, Capt. A. E. Waldron, United States engineer in charge of said work, notified the Hubbard Building & Realty Company that the defendant had requested the United States to take the articles of personal property specified in the complaint, and a portion of the materials, pursuant to the provisions of the contract with the Hubbard Building & Realty Company, and that they "are taken possession of under the provisions of paragraph 33 of the original specifications which form a part of the contract," and requested that the remainder of said material be removed within 30 days. A copy of this notification was sent to the plaintiff.

18. On said June 6, 1910, Capt. Waldron notified the defendant of the action taken by him, and stated: "The fact that the material and machinery is on the government reservation or in the near vicinity thereof, and the circumstances under which this office has not permitted its removal from the lock site, is sufficient to assume that the government has taken possession of the items you speak of at the present time. They are therefore turned over to you under the conditions contained in Insert E, following paragraph 38 of the specifications for the construction of lock and dam No. 6, Trinity river, Texas, for use in further work on lock and dam No. 6, Trinity river, Texas."

19. On June 22, 1910, Capt. A. E. Waldron, the engineer officer in charge, notified the defendant that the Hubbard Building & Realty Company had been directed to remove all property at said lock and dam No. 6, except that specified in said letter, and determined the valuation of the said property at the sum of $11,578, and fixed a monthly rental of $380 therefor from the government to the defendant. He also fixed a valuation upon the materials at the lock site and notified the defendant to take such of them as it deemed proper, at such valuations respectively.

20. The plaintiff refused to assent to either valuation.

21. On July 18, 1910, the defendant receipted to the United States government for the articles constituting said plant, and for such of the materials as it was willing to and did receive.

22. On August 5, 1910, Capt. Waldron notified the Hubbard Building & Realty Company and Mr. P. D. C. Ball that of the materials on hand the defendant had taken 13,120 lineal feet of round piling, 10,768 feet of sheet piling, and 9,552 feet of Wakefield piling; 480 bolts, with washers, ¾x12; 100 pounds nails; 50 cords of wood; 22 foot gauges for pier; 8 capstan levers; 8 friction roller arms; 8 journal boxes for dam; 8 cast gate anchors; 52 cast journals—upon which articles, exclusive of the piling, a valuation of

$570 had been placed by him, and notified said company and said Ball to remove the balance within 30 days. It did not appear that the balance was ever removed. The total valuation assessed by Capt. Waldron upon the material taken by the defendant and incorporated in the work was $2,640.96.

23. On June 22, 1910, Capt. A. E. Waldron forwarded to the defendant a memorandum invoice and receipt for the articles constituting the plant, and for such of the materials as the defendant was willing to and did receive, and on July 18, 1910, the defendant signed and delivered to the United States government a receipt for said plant and material theretofore turned over to it by said Capt. A. E. Waldron, as aforesaid.

24. On or about July 6, 1910, the defendant commenced work on lock and dam No. 6, and made use of the property belonging to the plaintiff, and described in the complaint, with the exception of 1,382 feet of round piles, 252 feet of sheet piling ready to drive, and 928 feet of sheet piling 12x12 ready to drive, and paid to the United States a rental of $380 per month, or was credited therewith, for use of the plant.

25. On or before the completion of said lock and dam No. 6 by the defendant, the property, other than materials taken and used by the defendant, was returned to the United States, and by it offered to the Hubbard Building & Realty Company and to said Ball, neither of whom accepted said property.

26. The United States neither paid, credited, nor tendered either purchase price or rental of said property to the plaintiff or to the Hubbard Building & Realty Company, except that in the final account between the United States and the Hubbard Building & Realty Company, after the completion of the work, the United States gave credit to the Hubbard Building & Realty Company for the value of said personal property and materials at the valuation determined by the engineer officer in charge. After the deduction of this credit, a balance was by the account shown to be due from the Hubbard Building & Realty Company to the United States.

27. The United States tendered to the Hubbard Building & Realty Company from time to time certain articles which the defendant no longer needed. On November 10, 1910, a letter was written by A. E. Waldron, Captain Corps of Engineers, to the Hubbard Building & Realty Company, a copy of which is hereto annexed, marked "Plaintiff's Exhibit D," and upon the completion of the work a letter, dated January 30, 1911, marked "Plaintiff's Exhibit E," a copy whereof is hereto annexed, was written by Capt. A. E. Waldron to the said Hubbard Building & Realty Company, whereby an offer was made to relinquish to said Hubbard Building & Realty Company certain items of said personal property therein described. This offer was never accepted, and no part of said personal property was removed from the site of lock and dam No. 6, either by the plaintiff or by the Hubbard Building & Realty Company.

28. Thereafter the Chief of Engineers of the United States Army by telegram dated Washington, D. C., February 3, 1911, directed to said Capt. A. E. Waldron, a copy whereof is hereto annexed and marked "Defendant's Exhibit 30," instructed said Capt. Waldron to withdraw his said letter of January 30, 1911, to the Hubbard Building & Realty Company, and to retain possession of all of said personal property until further advised by the office of said Chief of Engineers.

29. Thereafter and on February 3, 1911, said Capt. A. E. Waldron wrote a letter to the Hubbard Building & Realty Company, a copy whereof is hereto annexed and marked "Defendant's Exhibit 32," wherein it was stated that said Waldron was in receipt of telegraphic instructions from the Chief of Engineers at Washington directing that he withdraw his said letter of January 30, 1911, to the Hubbard Building & Realty Company, and retain possession of all of said plant until further advised by said Chief of Engineers, and a copy of said letter was sent to the said Chief of Engineers of the United States Army, to said P. D. C. Ball, and to the defendant.

30. On February 3, 1911, said Waldron also wrote a letter to John Ehrhardt, United States inspector upon the work on lock and dam No. 6, a copy of which is hereto annexed and which is marked "Defendant's Exhibit 33," wherein said Waldron stated that in view of the instructions from the Chief of Engineers said Ehrhardt should under no circumstances allow the Hub-

bard Building & Realty Company or any other claimant to take possession of any item of property or machinery at said lock and dam No. 6.

31. After the return of said property by the defendant to the United States government, the said property remained at the site of said lock and dam No. 6 in the possession of the United States government.

32. In the accounts between the United States and the Hubbard Building & Realty Company kept at the office of the engineer of the United States at Dallas, Tex., entries were first made by employés of the United States crediting to the Hubbard Building & Realty Company the same rental which was charged against the defendant for the use of said property; but thereafter, and after the receipt by said Waldron of the telegram of February 3, 1911, "Defendant's Exhibit 30," a copy whereof is hereto annexed, said credits of said rental were canceled, and the said Hubbard Building & Realty Company was credited with the valuation of said property determined by the engineer officer in charge.

The following conclusions have been reached:

1. That on the 6th day of July, 1910, the defendant unlawfully converted the personal property described in the complaint, with the exception of the following articles: 1,382 feet of round piles; 252 feet of sheet piling ready to drive; and 928 feet of sheet piling 12x12, ready to drive.

2. That on the 6th day of July, 1910, the fair market value of said property so converted at the site of lock and dam No. 6 was $15,000.

3. That paragraph 33 of the specifications, forming a part of the agreement with the Hubbard Building & Realty Company, approved July 28, 1906, which reads as follows: "33. Annulment.—In case of the annulment of this contract as conditionally provided for in the form of contract adopted and in use by the Engineering Department of the Army, the United States shall have the right to take possession of, wherever they may be, and to retain all materials, tools, buildings, tramways, cars, etc., or any part or parts of same prepared for use or in use in the prosecution of the work, together with any or all leases, rights of way or quarry privileges, under purchase, at a valuation to be determined by the engineer officer in charge"—does not, as a matter of law, authorize the United States to purchase materials, tools, etc., belonging to a third party, in the absence of agreement of the owner to assent to the provisions of paragraph 33.

4. That said paragraph 33 does not authorize the United States to purchase materials, tools, etc., prepared for use or in use in the prosecution of the work save on payment to the owner thereof at a valuation to be determined by the engineer officer in charge.

5. That said paragraph 33 does not authorize the United States to retain materials, tools, etc., whether the property of the contractor or of other parties, upon payment of a rental value to be determined by the engineer officer in charge.

6. That the plaintiff is entitled to a judgment in its favor for $15,000 with interest at the rate of 6 per cent. per annum, from July 6, 1910, to the date of judgment.

The defendant submitted the following claims, which were overruled:

1. P. D. C. Ball, doing business under the name of "Ball Engineering Company" and the plaintiff herein, was during the times when the property referred to in the complaint herein was owned by them, respectively, and now are, chargeable with notice of the provisions of the contract between the United States and the Hubbard Building & Realty Company and the specifications incorporated therein, "Defendant's Exhibit 8."

2. That the taking possession of said property by the United States government, and the allowance to the contractor the Hubbard Building & Realty Company of the amount of the valuation of said property, as determined by the engineer officer in charge, as a credit in the final statement of account between the said contractor and the United States government after the entire work of construction had been completed and accepted, constituted a rightful taking and retention of said property by the United States government pursuant to the provisions of the contract and specifications "Defendant's Exhibit 8."

3. No act of the defendant constituted a conversion of the property referred to in the complaint or of any part thereof.

New Haven, November 20th, 1913.

Respectfully submitted,        George D. Watrous, Committee.

Cummings & Lockwood, of Stamford, Conn., for plaintiff.

Lewis Sperry, of Hartford, Conn., for defendant.

THOMAS, District Judge. This is an action in conversion in which the parties waived a trial to the jury, and by consent the action was referred to George D. Watrous, Esquire, of New Haven, as sole committee to hear and determine the same and to report his findings of fact and conclusions of law. Thereafter the cause was duly heard by the said committee and a report filed in which it was found that the plaintiff is entitled to a judgment in its favor for $15,-000, with interest at the rate of 6 per cent. per annum from July 6, 1910 to the date of judgment.

Following the state practice, the defendant filed a motion to recommit the report to the committee, and later a substituted motion to recommit the report to the committee was filed by consent, and the defendant also filed a remonstrance to the report of the committee. The plaintiff filed a demurrer to the remonstrance and a motion for the acceptance of the report of the committee and for the entry of judgment. By agreement of the parties, the motions and the remonstrance were argued on the 10th day of March, 1914, and it was agreed by counsel that the arguments as then made should apply to the defendant's motion to recommit, to the defendant's remonstrance to the report of the committee, and to the plaintiff's motion for acceptance of the report and the entry of judgment.

It appears that the cause was heard at length before the committee, and on the hearing before this court on the defendant's motion to recommit and on the remonstrance no question was raised as to any rulings of the committee on the admission or exclusion of evidence, so that the only questions arising on the rulings of the committee in respect to matters of law are whether the conclusions were correct upon the facts as found by the committee. It is clear that the defendant unlawfully converted the personal property described in the complaint, with the exception of certain material mentioned in paragraph 1 of the conclusions of the committee, unless the United States obtained title to the property under clause 33 of its contract with the Hubbard Building & Realty Company. The principal questions of law before the committee were as follows:

1. Whether the said clause 33 gave the United States a right to take, under purchase, property not owned by the Hubbard Building & Realty Company, in the absence of agreement of the owner of such property to assent to the provisions of said paragraph 33.

2. If property belonging to a third party could be taken by the United States under paragraph 33, could such a taking be lawfully made by making payment for the property to the Hubbard Building & Realty Company and not to the owner?

3. Whether, in any event and irrespective of all questions of owner-

ship of the property, the United States took the property mentioned in the complaint under purchase.

The learned committee has reached the conclusion in paragraphs 3, 4, and 5 of his conclusions that the said paragraph 33 does not, as a matter of law, authorize the United States to purchase material, tools, etc., belonging to a third party, in the absence of agreement of the owner to assent to the provisions of paragraph 33, and that said paragraph does not authorize the United States to purchase materials, tools, etc., prepared for use or in use in the prosecution of the work, save on payment to the owner thereof at a valuation to be determined by the engineer officer in charge, and further that said paragraph 33 does not authorize the United States to retain materials, tools, etc., whether the property of the contractor or of other parties, upon payment of rental instead of a taking under purchase.

Upon considering the arguments and reading the briefs, together with the report of the committee, this court is satisfied that the committee was correct in his conclusions as set forth in the report and in his rulings of law. No substantial question is presented by the motion to recommit the report to the committee, and that motion is therefore denied.

Plaintiff has filed a demurrer to the remonstrance, and if the rulings complained of were correct, or, if not correct, they were not harmful to the remonstrant, and the demurrer must be sustained. Fox v. South Norwalk, 85 Conn. 237, 241, 82 Atl. 642. The demurrer to paragraphs 1, 2, 3, and 4 of the remonstrance is sustained for the reasons set forth in the demurrer, as said paragraphs do not show a mistake or error of law affecting the result; and the demurrer to all of the paragraphs of the remonstrance is sustained because all of the rulings complained of were correct.

As stated above, the motion to recommit is denied, the demurrer to the remonstrance sustained, and the remonstrance is overruled. Judgment may therefore be entered as of this date for the plaintiff to recover $18,362.50, together with the costs of this action.