(No. 11930.—Reversed and remanded.)
R. A. GROSS, Appellant, *vs.* THE ESTATE OF THOMAS H.
THORNSON, Deceased, Appellee.

*Opinion filed December 18, 1918—Rehearing denied Feb. 5, 1919.*

1. ADMINISTRATION—*claims of creditors, whether due or not due, stand on the same footing.* The purpose of the Administration act is to facilitate the early settlement of an estate, and all the property of the decedent constitutes a fund for the payment of all his debts, whether due or not, and all demands, whether due or not, must be exhibited within one year after the granting of letters of administration.

2. SAME—*purpose of section 111 of Administration act.* The purpose of section 111 of the Administration act, relating to uncompleted contracts by the decedent for the purchase of land, was to make available to creditors the interest of the decedent in the real estate for which the estate is unable to make complete payment, and to make available to the heirs and devisees the personal assets of the estate, before final settlement, to complete payments, where such payments can be made without prejudice to creditors.

3. SAME—*section 111 of Administration act was not enacted to enable an estate to avoid performance of unprofitable contract.* Section 111 of the Administration act was not enacted for the purpose of in any way affecting the liability of an estate upon an uncompleted contract by the decedent for the purchase of land nor to enable the estate to avoid the performance of an unprofitable contract, but merely enlarges the powers of the administrator without affecting the liability on the contract.

4. SAME—*vendor entitled to have note for unpaid portion of earnest money allowed as a claim.* A vendor holding a note of the decedent for the unpaid portion of the earnest money due upon a contract by the decedent to purchase land is entitled to have the same allowed as a claim against the estate without regard to section 111 of the Administration act, and when the note is produced by the vendor the burden is upon the administrator to prove any defense he has. (*Miskimen* v. *Culbertson,* 162 Ill. 236, overruled.)

5. EVIDENCE—*when copies of deeds are not admissible.* Certified copies of deeds are not admissible against an objection that they are copies, where no effort is made to account for the absence of the originals or to show that they were not in the control of the party offering such copies.

6. SAME—*when certificate of clerk of circuit court is not admissible.* A certificate of the clerk of the circuit court that cer-

tain land had been conveyed at various times by various grantors to various grantees, and referring to the volumes and pages of the records where such conveyances were recorded, is not competent evidence.

7. SAME—*title to land cannot be proved by oral testimony.* The title to property and conveyances thereof cannot be proved by oral testimony but only by the production of the deeds, or, in a proper case, by secondary evidence.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

BROWNE & WILEY, and McDOUGALL & CHAPMAN, for appellant.

A. A. CLAPSADDLE, and H. M. KELLY, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On February 20, 1914, R. A. Gross filed a claim against the estate of Thomas H. Thornson in the probate court of LaSalle county, being a promissory note for $2000 executed by Thornson to the claimant, dated September 8, 1913, and due on March 30, 1914. The claimant appealed from a judgment disallowing the claim to the circuit court, where there was a jury trial. Each party moved for a directed verdict, and the court having overruled the claimant's motion, directed a verdict for the defendant and rendered judgment against the claimant for costs. On appeal by claimant the Appellate Court affirmed the judgment, and a certificate of importance having been granted, the claimant appealed to this court.

The following are the facts proved on the trial: On September 8, 1913, the appellant and Thomas H. Thornson entered into a written agreement called an "earnest-money contract for the sale of real estate," by which Gross sold to Thornson a quarter section of land in McHenry

county, in this State, for $31,980, payable $2300 in hand, $3000 on March 30, 1914, $4800 by the conveyance of 160 acres of land in Texas on or before September 22, 1913, and the residue by the assumption of certain incumbrances on the McHenry county land. The contract acknowledged the receipt of $300 cash and the note for $2000 due March 30, 1914, as earnest money, and provided that Thornson should be entitled to a deed on March 30, 1914, if he had made all the payments agreed to be made up to that date. Thornson conveyed the Texas land to Gross and died intestate on December 23, 1913, leaving no widow or child but brothers, sisters and nephews as his heirs. His estate consisted of real estate of the value of $21,320 and $1932.38 in personal property. The costs of administration and the debts, aside from the appellant's claim, amounted to $7519.75, leaving the net worth of the estate, disregarding the appellant's claim, $15,732.63.

The facts contained in this record disclose no defense to the claim. It was a promissory note given, so far as appears, for a valuable consideration, without fraud or imposition. No defense is shown which could have been interposed by the maker in his lifetime, but it is insisted that because the consideration was the sale of real estate, the payment for which had not been completed, the estate was relieved from liability for its payment, and that it was optional with the administrator to pay it or not, according to the interest of the estate,—that is, if it was profitable to the estate to pay it it might do so, but if it was not profitable it could not be compelled to do so. This claim is based upon section 111 of the Administration act, (Hurd's Stat. 1917, p. 29,) which is as follows:

"Sec. 111. In all cases where a decedent is seized of a legal or equitable title to real estate, the payment whereof has not been completed, and the estate of such decedent is unable to make complete payment therefor, with advantage to such estate, the administrator or executor may sell or

dispose of such real estate upon the order of the county court, and the money arising from such sales shall be assets in the hands of such executor or administrator, as in other cases. But in all cases where the estate of any such decedent shall be solvent, and such lands as aforesaid may be paid for without prejudice to the creditors, heirs and devisees of the estate, the executor or administrator shall complete the payment for the same out of the proceeds of the personal property, in the name of the heirs or legal representatives of the decedent entitled thereto; and he shall be allowed a credit for the amount of such payments, and all reasonable expenses incurred in making the same, upon final settlement of such estate: *Provided,* that the provisions of this section shall, in nowise, interfere with the provisions of any last will or testament."

This section was construed in the case of *Miskimen* v. *Culbertson,* 162 Ill. 236, which sustains the contention of the appellee that a claim by the vendor of land for the unpaid purchase money cannot be allowed against the estate of the purchaser unless the estate is solvent and the payment may be made without prejudice to the creditors, heirs and devisees of the estate. In that case real estate had been sold for $1250, to be paid for in monthly installments of $12.50. About a year later the vendee died and the vendor presented a claim for the unpaid balance of the purchase money, the vendor offering to make a deed to the proper party upon being paid the amount of the contract. The larger part of the installments was not due, but under section 67 of the statute creditors are entitled to have their claims against an estate which are not due allowed, with a rebate of interest. The court construed section 111 as a restriction upon that right, which in a case of the character then before the court prohibited the creditor from having his claim allowed.

There is no reason why section 111 should apply only to claims which are not due. It is general in its language,

and if it restricts the allowance of claims for purchase money of real estate it applies equally to claims which are due and to claims which are not due. In the present case the note was not due at the time it was presented but it was due before the hearing, and there was no necessity for relying on section 67 for the right to have the claim allowed, even though other payments under the contract were not yet due. Section 67 has been a part of the statute since 1829. It was section 96 of the Wills act of that year. The claims of creditors against the estates of deceased persons, whether due or not due, stand upon the same footing. The Administration act is a specific act adopted for the particular purpose of facilitating the early settlement of estates of deceased persons. (*Waughop* v. *Bartlett,* 165 Ill. 124; *Union Trust Co.* v. *Shoemaker,* 258 id. 564.) All the property of the decedent constitutes a fund for the payment of all his debts, whether due or not, and all demands against such estate, whether due or not, must be exhibited within one year from the grant of administration. When allowed they are all entitled to share in the distribution of the assets of the estate in the same way, without distinction. Section 111 of the Administration act was adopted in 1872. In the Wills act of 1829, which has been referred to, sections 106 and 107 provide as follows:

"Sec. 106. In all cases where any testator or intestate, now deceased, or shall hereafter die seized of any lands, the payment whereof has not been completed to the United States, and the estate of such decedent is, or shall be unable to make complete payment therefor with advantage to such estate, it shall be lawful for the administrator, executor or other legal representatives of such deceased, to sell or dispose of the certificate or certificates of entry, or further credit of the same, in such manner as they may deem most advisable for the interest of such estate; and the money arising from such sales shall be assets in the hands of such executor or administrator, as in other cases.

"Sec. 107. But in all cases where the estate of any such testator or intestate shall be solvent, and such lands as aforesaid may be patented without prejudice to the estate, it shall be the duty of the executor or administrator to complete the payment for the same, by relinquishment or out of the proceeds of the personal property, as the case may require, in the name of the heirs or legal representatives of the decedent, entitled thereto; and he shall be allowed a credit for the amount of such payments, and all reasonable expenses incurred in making the same, upon final settlement of such estate: *Provided,* that the provisions of this and the preceding sections shall, in nowise, interfere with the provisions of any last will and testament, as aforesaid."

These sections had no relation to section 67 and nothing to do with contracts for the sale of real estate. They simply conferred upon the administrator the right to sell certificates of purchase of public lands of the United States or to complete payment therefor for the benefit of the heirs. They do not affect the right or liability of the estate upon any contract of the deceased. These sections remained a part of the statutes of the State until 1874, when they were repealed by the Revised Statutes of that year. Section 111 is a part of the Administration act which became effective July 1, 1872. It was not passed for the purpose of affecting in any way the liability of estates upon the contracts of decedents for the purchase of real estate. It does not purport to do so. Its object was to make available to creditors the interest of the deceased in real estate for which the estate was unable to make complete payment and to make available to the heirs and devisees the personal assets of the estate before final settlement, for the purpose of completing payments where such payments could be made without prejudice to creditors. Where a decedent had a contract for the conveyance to him of land upon the payment of money at a day subsequent to his decease, his in-

terest in the land and the contract descended to his heirs, who alone might make the payments and compel a conveyance to them of the title to the land. (*Buck* v. *Eaman,* 18 Ill. 529.) The administrator had no interest in the land. Under no circumstances had he anything more than a mere power, upon a deficiency of personal assets, to apply to the court for a decree to sell the real estate for the payment of the debts of the decedent. (*LeMoyne* v. *Quimby,* 70 Ill. 399; *Harding* v. *LeMoyne,* 114 id. 65; *Newell* v. *Montgomery,* 129 id. 58.) If a decedent held a contract for the purchase of real estate the payment of which was incomplete, and left minor heirs, though his estate might be perfectly solvent and able to complete the payments on the contract without prejudice to the creditors, yet the administrator had no authority to do so. The burden of making the payments would fall entirely on the heirs, whose only means of doing so might be the personal assets of the estate. To meet such a situation, apparently, section 111 was passed and not for the purpose of enabling the estate to evade the performance of an unprofitable contract. If the personal property was insufficient to make the payments for the land and pay the other indebtedness of the estate, the administrator was authorized to sell the interest of the decedent in the land upon the order of the county court and use the money arising from the sale as other assets of the estate. In case the estate was solvent and there was sufficient personal property to pay the debts and make the payments for the land, so that creditors would not be prejudiced or delayed by such payments, then the administrator was authorized to make such payments in the name of the heirs or legal representatives of the decedent and for their benefit. The section merely enlarged the powers of the administrator but did not affect his liability on the contract.

In *Miskimen* v. *Culbertson, supra,* it is said that if a sale is made as directed by the statute the estate will no longer occupy the position of a debtor to the vendor but

the purchaser of the interest of the decedent in the contract assumes that position, and in such case it seems obvious that the legislature intended to exclude the vendor from probating his undue claim against the estate. The assumption that the estate will no longer occupy the position of a debtor to the vendor but the purchaser will, is manifestly incorrect. The sale would amount substantially to the same thing as an assignment by the decedent and the purchaser would stand in the same position as the assignee. A vendee does not, by assigning the contract without the assent of the other party to it, relieve himself of the liability to make the payments he has agreed to make, and the assignee does not become liable to make the payments. It is a violent presumption to conclude that the legislature intended, by authorizing the sale of the interest of the testator, to deprive the vendor, without his consent, of the personal responsibility of the vendee and his estate, which might be ample, and to restrict him to the responsibility of the purchaser of the deceased's interest, which might be worthless. It is also said in the *Miskimen case,* where the vendor can not have his claim allowed against the estate he holds the land as security for the debt and is thus protected from loss. No such conclusion can be drawn as that the security of the land is sufficient to protect the vendor from loss, and even if it could, it is not to be presumed, in the absence of plain language, that the legislature intended to restrict the vendor having a lien on the personal assets of the estate, as well as a lien on the land, to the latter, only. In our judgment the case of *Miskimen* v. *Culbertson, supra,* gives an improper construction of section 111 and it must be overruled.

The appellee has assigned cross-errors. It offered in evidence certified copies of certain deeds, which were objected to because they were copies. No effort was made to account for the absence of the originals or to show that

they were not in the control of the appellee, and the objections were therefore properly sustained.

Appellee also offered a certificate of the clerk of the circuit court that the McHenry county land had been conveyed at various times by various grantors and to various grantees, referring to the pages and volumes of the records in which such conveyances were recorded. The objection was properly sustained because the certificate of the clerk to such facts was not competent. If such deeds were material evidence they could be proved only by the production of the deeds themselves or by secondary evidence of their contents, upon a proper showing.

The appellee called the appellant as a witness and offered to prove orally by his testimony that since the execution of a certain deed for the McHenry county property the appellant had never had the title to the property described in the deed and that George T. Noe was then the owner in fee of the property, and that after the execution of the deed to Riley the property was conveyed by Riley and by his successive grantees to Noe. The objections were properly sustained to this evidence, because the title to the property and the conveyances could not be proved by oral testimony but only by the production of the deeds, or, in a proper case, by secondary evidence.

The appellee offered to prove that the value of the McHenry county land did not exceed $140 an acre or $22,400. By itself this evidence was not material. It might have been in connection with other evidence, but no offer of evidence which would make it material was made.

The production of the note by the claimant made a *prima facie* case in his favor and the burden was then on the appellee to prove any defense it might have. If the note was given without consideration or if it was fraudulently obtained, or the contract was obtained by fraudulent misrepresentation, or the vendor was unable to convey the

title he contracted to convey, the burden of showing these facts was on the defendant. On the record as it is presented the instruction of the court to find for the defendant was erroneous.

The judgment will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*