### BALL ENGINEERING CO. v. J. G. WHITE, Inc.

(District Court, D. Connecticut. August 31, 1922.)

No. 813.

1. **United States ⬦71—Government contract not enforceable against persons carrying on the work in the name of the contractor.**

Assuming that persons carrying on work under a government contract in the name of the contractor were the contractor's assignees, where they never agreed, either with the government or the contractor, to do any work, the government could not enforce the contract against them, especially as, under Rev. St. § 3737, it was not obliged to recognize an assignee, and did not in fact recognize them.

2. **United States ⬦71—Where government refused to recognize assignees as parties to contract, their property was not subject to provision permitting government to appropriate.**

Where the government declined to recognize persons carrying on work under a government contract in the name of the contractor as parties to the contract, the fact that it permitted them to perform the work was no consideration for their promise to subject their property to the operation of the contract, and their intent to be bound by the contract did not create an implied agreement to subject their property to a provision authorizing the government, upon annulment of the contract, to take over all materials, tools, etc., at a valuation to be determined.

3. **United States ⬦71—Agreement by assignee of contract to permit government to take possession of property on payment to contractor could not be implied.**

Even though a government contractor's assignees agreed to subject their property to the provisions of the contract, which authorized the government, on annulment of the contract, to take over all materials, tools, etc., at a valuation to be determined, no agreement could be implied on their part to permit the government to acquire title to their property on payment of the purchase price to the contractor, especially where even this payment was not made until after possession had been taken by one to whom the government relet the contract.

4. **Reference ⬦101(1)—Court has inherent power to recommit.**

The court has inherent power to recommit the report of a committee for such further findings as will enable the parties to present their claims of law.

At Law.    Action by the Ball Engineering Company against J. G. White, Inc.   On defendant's motion for judgment, plaintiff's remonstrance and motion to recommit, and defendant's demurrer thereto. Demurrer overruled, and report recommitted, with instructions.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles D. Lockwood, of Stamford, Conn., and William M. Parke, of New York City, for plaintiff.

Harry W. Reynolds, of Hartford, Conn., A. L. Humes, of New York City, and J. Kemp Bartlett, of Baltimore, Md., for defendant.

THOMAS, District Judge. This case is now before me for the third time upon the defendant's motion for judgment in its favor upon the report of the committee, and upon the plaintiff's remonstrance and motion to recommit the report to the committee for modifications of his findings of facts, and upon the defendant's demurrer to the remonstrance and motion to recommit. In view of the conclusions herein reached, only the motion to recommit will be discussed. For the previous history of this litigation see (D. C.) 212 Fed. 1009; (C. C. A.) 223 Fed. 618; 241 Fed. 989, 154 C. C. A. 661; and 250 U. S. 46, 39 Sup. Ct. 393, 63 L. Ed. 835.

The material findings of the committee's report are:

That on July 10, 1906, the United States entered into a contract with the Hubbard Building Realty Company to construct lock and dam No. 6 on Trinity river, near Dallas, Tex. That the contract provided, inter alia, that if the contractor failed to prosecute the work faithfully and diligently in accordance with the specifications and requirements of the contract the United States should have power to annul the contract by giving the contractor notice in writing to that effect (paragraph 4), and that in case of such annulment the United States should have the right to take possession of all materials, tools, buildings, etc., prepared for use or in use in the prosecution of the work, under purchase, at a valuation to be determined by the engineer officers in charge (paragraph 33). That shortly after the execution of the contract the Hubbard Building & Realty Company was obliged to suspend work for lack of funds, and that thereafter the work on said lock and dam proceeded in the name of the Hubbard Building & Realty Company, under the direction of various parties, who became successively the owners of 30 shares of stock of said company, until October 30, 1907, when George E. White, the owner of said stock, sold it to George A. Carden and P. D. C. Ball, who constituted the Ball-Carden Company, and agreed to execute or cause to be executed to said partnership the necessary instruments in writing to transfer to said company, among other things, an undivided one-half interest in all plant and equipment which said Hubbard Building & Realty Company had placed on the government reservation at lock and dam No. 6, and a one-half interest in the contract with the government for the building of said lock and dam, and that, about the same time, Carden was elected president of the Hubbard Building & Realty Company.

That thereafter the Ball-Carden Company, and, after the dissolution of that partnership in May, 1909, P. D. C. Ball, proceeded with the work of constructing said lock and dam in the name of the Hubbard Building & Realty Company. That all the work done and materials furnished in constructing said lock and dam up to September 9, 1909, were supplied and furnished under said contract and in ac-

cordance with the terms thereof, and all payments for work performed and materials furnished up to said date were made upon estimates made up under and pursuant to said contract by the United States Engineer Officer in charge. That all work done on said lock and dam from November 6, 1907, to May, 1909, was done by the Ball-Carden Company in the name of the Hubbard Company, and the monthly payment checks issued by the United States to said company in payment of said work were indorsed over to said Ball-Carden Company. That said partnership purchased some of the machinery, plant, equipment, and materials described in paragraph 3 of the complaint, and used them in the construction of said lock and dam. That after the dissolution of said partnership, in May, 1909, Ball acquired its property, and, in the name of the Hubbard Company, continued the work of constructing said lock and dam under said contract until September 9, 1909, using said property for that purpose. That Carden continued to act as president of the Hubbard Company, and the monthly payment checks for said work were issued as theretofore and indorsed by Carden to Ball.

That both Ball and Carden learned of the provisions of the government contract during the time that the Ball-Carden Company was performing the work on said lock and dam. That said Ball-Carden Company and Ball acted under said government contract, and acquiesced in the provisions thereof, and performed said work thereunder. That the government and its representatives, while insisting always that on its records, it must recognize only the contractor mentioned in the contract between the government and the Hubbard Company, knew that the work thereunder was being carried on by said Ball-Carden Company and Ball respectively, and did not object thereto. Said parties acted in good faith in undertaking the work under said contract, and when so undertaking it they respectively intended to be bound by it. That the equipment, tools, machinery, and other personal property referred to in the complaint were prepared for use ·or in use in the prosecution of the work on said lock and dam, and were at or near the site of said dam at the time of the abandonment of the work thereon and at the time of the annulment of said contract.

That two applications, dated, respectively, August 21, 1908, and May 29, 1909, were made to the government for extensions of time for the completion of the work under said contract in the name of the Hubbard Company and signed by Carden, its president, but in fact for the benefit of and in the interest of said Ball-Carden Company and Ball In the latter of these letters (by reference incorporated into the report) it was expressly stated that neither the Ball-Carden Company nor Ball considered themselves bound to continue the work under the contract. The first application was granted and the second refused.

That on September 9, 1909, work on said lock and dam was abandoned, and on October 22, 1909, the government annulled the contract between itself and the Hubbard Company pursuant to its terms, and on that date formally notified said company by letter of said annulment. On or about April 2, 1910, the plaintiff was incorporated

under the laws of Missouri, and on the same date P. D. C. Ball executed and delivered to the plaintiff a bill of sale of various articles of plant equipment and property, including all the property designated in the complaint. Thereafter bids were invited for the work of completing said lock and dam, and the defendant was the successful bidder. Upon the annulment of the contract with the Hubbard Company the government seized all the property in question under the provisions of paragraph 33 of said contract, and notified said company to that effect, and turned them over to the defendant, which used them in the work of completing the lock and dam under an agreement with the government by which the defendant paid the government a fair monthly rental for the use of the property, which rental was fixed by the government. The defendant used all of said property, with the exception of a small part, which was returned to the government. That in the final accounting between the government and the Hubbard Company, when the work on the lock and dam had been completed and accepted, the government gave credit to the Hubbard Company for the value of said personal property and materials at the valuation determined by the engineer officer in charge. After the deduction of this credit a balance was, by the account, shown to be due from the Hubbard Company to the government.

From these facts the committee concluded that the Ball-Carden Company had adopted the provisions of the contract of July 10, 1906, became bound by its provisions, and subjected the property described in the complaint to the provisions of said contract, including section 33 thereof; that therefore the seizure of that property by the government was lawful, and the defendant, in receiving it from the government and using it, was not guilty of a conversion thereof.

It has been settled by previous decisions in this case that the government had no authority to take the property of the plaintiff, or its predecessors in title, by virtue of anything contained in its contract with the Hubbard Company, and that no facts appeared from the record then before the courts from which an obligation in law, or an actual agreement, on the part of the Ball-Carden Company or Ball to subject their property to the operation of that contract, could be implied. I do not think that the additional facts found in the report now before me justify a different conclusion.

[1] Even if we assume that the Ball-Carden Company and Ball were the assignees of the Hubbard Company, they never agreed, either with the company or with the government, to do any work on lock and dam No. 6. Even in the absence of R. S. § 3737, the government could not have enforced the contract against them. 1 Williston on Contracts, 764; Gross v. Thornson's Estate, 286 Ill. 185, 121 N. E. 600; A. S. Cameron Steam Pump Works v. Lubbock, etc., Co. (Tex. Civ. App.) 167 S. W. 256. The fact that under the statute the government was not obliged to recognize the assignee, either in the execution of the contract or in the payment of the consideration, and that it did not in fact recognize them, makes the case all the stronger. Burck v. Taylor, 152 U. S. 634, 14 Sup. Ct. 696, 38 L. Ed. 578.

[2] The committee apparently thought that, because the govern-

ment accepted performance on the part of the Ball-Carden Company and Ball as performance by the Hubbard Company, and because the latter did the work with knowledge of the provisions of the contract, and with the intention of being bound by it, an agreement to subject their property to its provisions must necessarily be implied. The existence of such an agreement implied in fact is negatived by the express finding of the committee that the government declined to recognize the Ball-Carden Company or Ball as parties to the contract. It is true that it permitted the assignees to perform the work under the contract, but it could have withdrawn that permission at any time. Its failure to exercise this right was no consideration for the promise of the Ball-Carden Company or Ball, if any, to subject their property to the operation of the contract. Therefore the finding that they intended to be bound by the contract is immaterial.

Campbell v. District of Columbia, 117 U. S. 615, 6 Sup. Ct. 922, 29 L. Ed. 1007, relied upon by defendant, and the only case cited, merely held that the assignee of a contract with the defendant, who had performed work under it, could not recover of the defendant on a quantum meruit a greater amount of compensation than that provided by the contract for the doing of the work, especially when he accepted the allowance made him as settlement of his claim in full. It is not questioned that an assignee can acquire no greater *rights* under a contract than his assignor. But it does not follow that he is subject to the same *liabilities,* in the absence of an agreement to perform the contract. The purpose of paragraph 33 of the contract of July 10, 1906, was clearly to give the government a remedy for its breach in addition to other remedies provided for in the contract. Since neither the plaintiff nor its predecessors in title were bound to perform the contract, their property was not subject to the provisions of paragraph 33.

[3, 4] But, even if the Ball-Carden Company had agreed to subject its property to the provisions of the contract, I do not believe that an agreement could be implied on its part to permit the government to acquire title to its property on payment of the purchase price to a third party; and even such payment was not attempted until after the defendant had taken possession of the property in question. While the defendant seriously urges that the court has no power to recommit the report of the committee, an examination of the authorities cited shows conclusively, under the circumstances here presented, that such power is inherent in the court, and a discussion of the cases will only result in the reiteration of legal principles firmly established by courts of last resort.

Without considering separately each item of the plaintiff's motion to recommit the report, the committee is directed, in so far as the evidence is found by the committee to support the findings, to make findings as suggested in the plaintiff's motion to recommit, in order that the parties to this cause may have an opportunity to present their claims of law upon all undisputed facts, and facts found by the committee, which may be material in determining such claims of law.

Since the committee's findings of fact do not support the conclu-

sions reached, and since the committee has failed to find the value of the plaintiff's property taken by the defendant, the report is recommitted, with instructions to find such value.

The defendant's demurrer to plaintiff's motion to recommit is therefore overruled; and it is so ordered.